Martin E. Rosen (SBN CA 108998)
mrosen@mail.hinshawlaw.com
Vivian I. Orlando (SBN CA 213833)
vorlando@mail.hinshawlaw.com
HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
Telephone:    213-680-2800
Facsimile:    213-614-7399

Attorneys for Defendant
AXA Equitable Life Insurance Company

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FINKELSTEIN, M.D.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>AXA EQUITABLE LIFE INSURANCE COMPANY aka EQUITABLE; RICHARD J. BOYER, an individual; and DOES 1 through 20, inclusive,<br><br>                    Defendants. | Case No.:   17-1089<br><br>**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1441 AND 1446 ON THE BASIS OF DIVERSITY JURISDICTION [28 U.S.C. § 1332]**<br><br>Complaint Filed:  January 30, 2017<br><br>[Filed concurrently with:<br>- Declaration of Vivian I. Orlando;<br>- Declaration of  Robert F. Mills, Jr.;<br>- Certification as to Interested Entities;<br>- Corporate Disclosure Statement;<br>- Civil Cover Sheet; and<br>- Certificate of Service.] |

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

Notice of Removal
36257992v1 0990308

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, THE PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that defendant AXA Equitable Life Insurance Company ("AXA Equitable") hereby removes Case Number CIV 1700339 from the Superior Court of the State of California for the County of Marin to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Removal of this action on the basis of diversity jurisdiction is proper for the following reasons:

## REMOVAL IS TIMELY

AXA Equitable was first served with process in this action on February 1, 2017, when it was served with a copy of the Summons and Complaint, true and correct copies of which are attached hereto as **Exhibit A**.   Removal is timely under 28 U.S.C. Section 1446(b) in that removal is sought within 30 days after service of the Summons and Complaint.

## DIVERSITY JURISDICTION EXISTS

This is a civil action over which this Court has jurisdiction under the provisions of 28 U.S.C. § 1332, and is one which may be removed to this Court by AXA Equitable pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of different states, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, as set forth more fully below.

## Summary of Plaintiff's Claims

*The sale of the Primary Policy:*  Plaintiff David Finkelstein, M.D. ("Plaintiff") alleges that, on June 3, 1982, he purchased an AXA Equitable disability insurance policy, Policy No. 82709341 (which he defines as the "Primary Policy"), which was issued on or about June 23, 1982.  *See* Complaint (attached as Exhibit A hereto), ¶¶ 7, 12.

*The amount of the monthly benefits:*  Plaintiff alleges that the Primary Policy provided for $5,000 in monthly benefits if Plaintiff qualified for "total disability" under the terms of the Primary Policy.  Complaint, ¶ 12.  He further alleges the Primary Policy provided a cost of living

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

Notice of Removal
36257992v1 0990308

adjustment that, after one year, would increase the total disability monthly benefit by 6%, with a further upward adjustment of ½% after each further month of total disability. *Id.*

The duration of the monthly benefits:  Plaintiff alleges that under the terms of the Primary Policy, if he were to become totally disabled before age 50, he would be entitled to *lifetime* benefits.  Complaint, ¶ 13.  Otherwise, he would only be entitled to benefits to age 65.

The modification of the Primary Policy to include a Residual Disability Provision: Plaintiff alleges that on September 26, 1985, three years after purchasing the Primary Policy, defendant Richard J. Boyer ("Boyer"), the agent who sold him the Primary Policy, recommended to Plaintiff that he modify the Primary Policy to add a Residual Disability Income Provision rider (what he calls a "Residual Disability Provision"), whereby the Primary Policy would provide for the payment of residual (partial) disability benefits, with a durational limit of up to his 65th birthday.  Complaint, ¶ 8.

Plaintiff's allegations of total disability, and of AXA Equitable's alleged *misclassification of his total disability as residual disability:*  Plaintiff alleges that he was *totally* disabled no later than 1998, when he was 48 years old.  Complaint, ¶¶ 18-22.  Thus, per this allegation, Plaintiff would be entitled to total disability benefits potentially for his lifetime. However, Plaintiff alleges that at that time (in 1998), AXA Equitable wrongly determined that he was not totally disabled, but only *residually* disabled.  Complaint, ¶¶ 20-22.  The effect of this purported misclassification was: (1) to preclude his potential entitlement to lifetime total disability benefits (Complaint, ¶ 22); (2) to cause AXA Equitable not to pay him cost of living adjustments (Complaint, ¶ 26); and (3) though not alleged in the Complaint, but as discussed further below, to cause AXA Equitable not to provide him with Waiver of Premium benefits for several years.

## The Amount in Controversy Is Met

The amount in controversy exceeds $75,000 and thus exceeds the jurisdictional minimum of this Court, as set forth below.

Plaintiff alleges in June 2016, the policy anniversary after his 65th birthday, AXA Equitable terminated his benefits under the Primary Policy.  Complaint, ¶ 23.  As previously

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

noted, Plaintiff contends that, as a result of AXA Equitable's conduct, in addition to being denied further disability policy benefits, he also suffered the loss of cost of living adjustments.  He further contends that he suffered emotional distress, was required to engage legal counsel to seek benefits due to him, and is entitled to punitive damages, as well as treble punitive damages under Civil Code section 3345.  *See, e.g.,* Complaint, ¶¶ 26-31, 40, 45.  Thus, the Complaint frames a dispute regarding Plaintiff's alleged entitlement to policy benefits from June 2016 until the end of his lifetime, along with previously due cost of living adjustments beginning in 1999.   Plaintiff alleges two claims against AXA Equitable: breach of contract and breach of the covenant of good faith and fair dealing.

   *Past due benefits*:  As of the filing of the Complaint (January 30, 2017), approximately $105,000 in policy benefits have accrued since June 2016 (approximately $15,000 per month times approximately seven months).  Complaint, ¶¶ 12, 23; *see also* the concurrently filed Declaration of Robert F. Mills, Jr. ("Mills Decl."), ¶ 5.  This alone, of course, satisfies the amount in controversy.

   *Future benefits*:  Future policy benefits are potentially recoverable in connection with Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (assuming Plaintiff were to prevail on that claim).  *See Pistorius v. Prudential Ins. Co. of America*, 123 Cal.App.3d 541, 551 (1981); *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 824 n. 7 (1979).  As such, they are to be considered in determining the amount in controversy for purposes of establishing federal court jurisdiction.  *Albino v. Standard Ins. Co.*, 349 F.Supp.2d 1334 (C.D. Cal. 2004).

   Plaintiff is currently approximately 66 years old.  *Complaint,* ¶¶ 18, 23, 27.  The Court may take judicial notice that a man of that age has a life expectancy well over one year.  Thus, with policy benefits at issue of over $15,000 per month for the remainder of Plaintiff's lifetime, the future policy benefits, by themselves, independently satisfy the amount in controversy requirement.

   In addition to benefits allegedly due under the Primary Policy, Plaintiff is seeking emotional distress damages, attorneys' fees, punitive damages and treble damages.  *See*

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

Complaint, ¶¶ 26-31, 38-40, 45; Prayer, ¶¶ 1-7.  Courts have held that emotional distress damages, attorneys' fees and punitive damages are to be considered in calculating the amount in controversy.  *See Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447 (S.D. Cal. 1995); *Conrad v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) (finding that special and general damages, attorneys' fees, and punitive damages are included in the calculation of the amount in controversy).  These alleged damages further support the conclusion that the damages sought, and thus the amount of money in controversy, exceeds the jurisdictional minimum of this Court.

### There Is Complete Diversity of Citizenship

*Defendant AXA Equitable:*  AXA Equitable is, and at all relevant times was, a corporation organized and existing under the laws of the State of New York with its principal place of business in New York.  *See* the concurrently filed Declaration of Vivian I. Orlando ("Orlando Decl."), ¶ 2, Ex. A.  Accordingly, at the time of the filing of this Notice of Removal, AXA Equitable was and is a citizen of the State of New York.

*Plaintiff Finkelstein:*  Plaintiff resides in Marin County, California (*see* Complaint, ¶ 1), and AXA Equitable is informed and believes and on that basis alleges that at all relevant times Plaintiff was a citizen of the State of California.[1]  *See also* Orlando Decl., ¶ 3, Ex. B (attaching LexisNexis Accurint Comprehensive Report obtained regarding Plaintiff, further evidencing that he is a resident in Marin County, California and is domiciled in and a citizen of California).

*Defendant Boyer:*  Although the Complaint names Boyer as a defendant, as set forth below, his citizenship should be disregarded for purposes of determining diversity jurisdiction

---

[1] Assertions of citizenship in removal papers based on a complaint's residency allegations are, by themselves, sufficient for purposes of asserting diversity jurisdiction.  *See*, *e.g*., *Smith v. T-Mobile USA, Inc*., 2012 WL 12895707, *2 (C.D. Cal. 2012) (On removal:  "Because a person's residence can be prima facie evidence of citizenship, [Citation], the Court accepts that Plaintiff is a citizen of California for the purposes of diversity jurisdiction.");  *Ayala v. Cox Automotive, Inc.*, 2016 WL 6561284, *4 (C.D. Cal. 2016) (On removal:  "Plaintiff alleges that he 'is, and at all times mentioned in the Complaint was,' a California resident.  [Citation.]  This allegation gives rise to a presumption that Plaintiff is a California citizen.  …We therefore conclude that complete diversity exists between Plaintiff and Entity Defendants.").

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

1    because he is a "sham defendant," or put another way, there has been a "fraudulent joinder."

2    Fraudulent joinder is "merely the rubric applied when a court finds either that no cause of action is

3    stated against the nondiverse defendant, or in fact no cause of action exists." *AIDS Counseling &*

4    *Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990).

5            The two causes of action alleged against Boyer are for negligent misrepresentation and

6    negligence. These claims are both ultimately premised on the fact that AXA Equitable did not

7    classify Plaintiff as totally disabled in 1998, the only act that allegedly caused Plaintiff any

8    damages. As a result of that purported "misclassification": (1) In 1998, AXA Equitable did not

9    pay Plaintiff cost of living adjustment benefits to which he claims he was entitled; (2) in 1998,

10   AXA Equitable did not provide Plaintiff with waiver of premium benefits for which he would only

11   have been eligible if totally disabled; and (3) AXA Equitable did not pay benefits under the

12   Primary Policy after Plaintiff turned age 65.

13           Although the above purported "misclassification of disability" conduct is alleged to

14   have been committed by AXA Equitable, and not Boyer,[2] Plaintiff asserts that Boyer is also

15   individually liable in damages for Plaintiff's failure to receive those benefits. The basis for

16   Boyer's alleged liability is his alleged representations to Plaintiff in *1982* that the Primary Policy

17   was being purchased from a "reliable" and skilled disability insurance company, that Plaintiff's

18   disability claims would be processed in good faith, and as a result, that if he became totally

19   disabled before age 50, he would receive lifetime benefits with a cost of living adjustment.

20   Complaint, ¶¶ 47, 57. Plaintiff was allegedly further told that the policies he purchased, including

21   the Primary Policy, were the "highest quality" and "best" disability policies available. *Id*. Neither

22   the negligent misrepresentation nor the negligence claims against Boyer is viable, for at least three

23   independent reasons.

24           [1] Statute of limitations: First, the applicable statutes of limitation preclude Plaintiff's

25   claims against Boyer. Negligent misrepresentation actions are governed by the two-year statute of

26   _____

27   [2] Indeed, as the insurance salesperson who sold Plaintiff the Primary Policy, and not a person who
     evaluated Plaintiff's claim for benefits, Boyer had nothing to do with the company's classification

28   of Plaintiff's claim as one for total disability versus residual disability.

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

Notice of Removal
36257992v1 0990308

limitations applicable to actions upon a liability "not founded on an instrument in writing." *Sahadi v. Scheaffer*, 155 Cal.App.4th 704, 715 (2007).[3]   The statute of limitations for a professional negligence claim is also two years.  Cal. Code Civ. Proc. § 339.   The statute of limitations for deceit and negligence-based claims begins to run when the plaintiff suspects or should suspect that he has been wronged.  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110, 1111 (1988).

Boyer's purported negligent misrepresentations and negligence occurred in <u>*1982*</u>, when Boyer sold Plaintiff the Primary Policy (and perhaps again in 1985 when the residual disability rider was suggested and issued).  Under *Jolly*, *supra*, Plaintiff's claims accrued when he knew or should have known that Boyer's representations were false, *i.e.*, when he knew that he was (allegedly) totally disabled, but that AXA Equitable was refusing to classify him as totally disabled.  AXA Equitable believes that that occurred in 1998, when AXA Equitable initially told Plaintiff that he was residually disabled.  However, Plaintiff's claims certainly had accrued at the very latest in <u>*2009*</u>, when Plaintiff told AXA Equitable that he thought he should have been considered totally disabled when his claim incepted, in 1998, and therefore asked AXA Equitable to reconsider its prior decision that he was only residually disabled at that time.  In response, AXA Equitable explicitly told Plaintiff (by letter dated December 15, 2009) that it disagreed and was maintaining its prior "residually disabled" decision.  *See* Mills Decl., ¶ 3, Ex. A (the December 15, 2009 letter from AXA Equitable to Plaintiff so stating).[4]

Further, Plaintiff had suffered damages as of the 1998 decision, but certainly as of 2009:

(i) *Damages re COLA adjustment:*  The Primary Policy provides for a cost of living adjustment to policy benefits after one year of the insured having been totally disabled.  *See* Mills

---

[3] The statute of limitations for negligent misrepresentation based on fraud or deceit is three years. Cal. Code Civ. Proc. § 338.

[4] As AXA Equitable explicitly told Plaintiff in that 2009 letter:  "I write in response to your . . . request that we consider you totally disabled from the onset of your claim in 1998.  …[W]e believe that the evaluation of your claim has been appropriate and that you were entitled to Residual Disability benefits, but not Total Disability benefits, prior to when you stopped working in September 2004.  Therefore, we see no basis for changing our prior determination."  *See* Mills Decl., Ex. A, bates page 3037.

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

Decl., ¶ 4, Ex. B (the Primary Policy), at bates pages 3859-3860. Plaintiff admits that he knew, as of *1998*, that he was being classified as residually (not totally) disabled. Complaint, ¶ 20. (As earlier discussed, Plaintiff also complained about the allegedly wrongful "residual disability" classification at various times, including in 2009, the result of which was that AXA Equitable told Plaintiff it was not changing its determination.)

As a result, Plaintiff was allegedly deprived of (among other things) the cost of living adjustment to his benefits that would have been paid to him if he had been classified as totally disabled. Complaint, ¶ 26. The impact of the alleged improper residual disability determination would have been evident to Plaintiff at the latest when the cost of living adjustment was in fact not paid to him, beginning in 1999. Thus, by 1999 – 18 years before filing suit – Plaintiff knew or should have suspected the alleged wrongs for which he now complains, especially because he had not been paid benefits to which he believed he was entitled. As a result, the statutes of limitation ran on the negligent misrepresentation and negligence claims by no later than the end of 2001, and his claims against Boyer are time-barred.

(ii) *Damages re Waiver of Premium benefit:* In addition, the Primary Policy provides Waiver of Premium ("WOP") benefits to an insured who is *totally* disabled under the Policy. *See* Mills Decl., ¶ 4, Ex. B (the Primary Policy), at bates page 3861. However, the Primary Policy and the rider to that policy that contains the Residual Disability Provision do not contain any language providing for WOP benefits in the event of *residual* disability. *See* Mills Decl., Ex. B, at bates pages 3857-3858 and 3861-3863. AXA Equitable first provided WOP benefits to Plaintiff under the Primary Policy in 2004, when it decided he was totally disabled as of that date, but it did not provide Plaintiff with any WOP benefits under the Primary Policy prior to that date. Mills Decl., ¶ 3, Ex. A (the December 15, 2009 letter from AXA Equitable to Plaintiff, so stating), at bates page 3034. This is so even though Plaintiff claims he was totally disabled starting in 1998. Because Plaintiff asserts he was totally disabled as of 1998 (Complaint, ¶¶ 20-22), but AXA Equitable classified Plaintiff as residually disabled from 1998 through 2004, Plaintiff allegedly suffered additional harm (beyond the unpaid cost of living adjustment benefits) in the form of unpaid WOP benefits, 19 years ago. For this reason, too, his claims against Boyer are time-barred.

7

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

Notice of Removal
36257992v1 0990308

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    (iii) *Damages re duration during which disability benefits would be paid:*  In addition, AXA Equitable specifically told Plaintiff in *2009* that he would never be paid total disability benefits beyond age 65 under his Primary Policy because AXA Equitable had determined that he did not become totally disabled before age 50.  *See* Mills Decl., ¶ 3, Ex. A, at bates pages 3037, 3036, 3034.  Informing an insured that he will not later obtain insurance benefits allegedly due to him starts the running of statutes of limitation based upon that alleged misrepresentation.  *E.g.*, *Flynn v. Paul Revere Ins. Group*, 2 Fed. Appx. 885, 2001 U.S. App. LEXIS 1838, *5 (9th Cir. 2001) (claim accrued when the insurer first told the insured that he was not entitled to accidental injury benefits – which had the effect of limiting policy benefits to age 65 as opposed to the insured's lifetime – not years later when the benefits actually ceased to be paid).  Plaintiff sued AXA Equitable and Boyer in 2017, at least eight years after his cause of action accrued (which occurred, at the latest, 2009).  His claims against Boyer are therefore time-barred.

    [2]  Representations of a past and existing fact:  Second, and independently, Plaintiff's claims fail against Boyer because a claim for negligent misrepresentation (or negligence based upon that conduct) requires, among other things, that the defendant have made a representation as to a past or existing material fact and that the plaintiff justifiably relied on the representation. *Gagne v. Bertran*, 43 Cal.2d 481, 487-88 (1954); *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal.App.3d 388, 402 (1989).  No such representation as to past or existing fact was made by Boyer.  Even if Boyer represented that AXA Equitable would fairly adjudicate his claims and would pay him disability benefits for life if he became disabled before age 50, those alleged representations concern future belief and conduct.   As such, they cannot form the basis of a negligent misrepresentation or negligence claim.  *Magpali v. Farmers Group, Inc.*, 48 Cal.App.4th 471, 481-82 (1996).   In fact, there are no allegations that AXA Equitable determined in 1998 that Plaintiff was residually disabled based on anything that Boyer said or did over a decade earlier.  Rather, through his negligent misrepresentation and negligence claims, Plaintiff is simply attempting to hold Boyer liable for AXA Equitable's purported 1998 breach of contract by disguising his claim as one for negligent misrepresentation.

    [3]  Puffery:  Finally, a third independent basis for the failure of Plaintiff's claims

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

against Boyer is that Boyer's alleged representations – such as that AXA Equitable was "reliable," the "best," the "highest quality," or that it would fairly handle claims and pay benefits if an insured is disabled – amount to general statements of sales talk or puffery, and do not support a basis for a negligent misrepresentation or negligence claim. *See, e.g., Cty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1038–39 (N.D. Cal. 2011) (noting, among other things, that puffery or puffing has been recognized as vague, exaggerated, generalized or highly subjective statements regarding a product or business which do not make specific claims and concern expressions of opinion); *Sandry v. First Franklin Fin. Corp.*, 2011 WL 1748613, at *3 (E.D. Cal. 2011) (representations of value such as "best" are not actionable, but rather amount to opinions); *ADP Commercial Leasing, Inc. v. M.G. Santos, Inc.*, 2013 WL 3863897, at *7 (E.D. Cal. 2013) (same); *Hatch v. HSBC Bank, USA, N.A.*, No. F065424, 2013 WL 2973816, at *3 (Cal. Ct. App. 2013) (representations that loan modification was "fair and reasonable" lacks sufficient specificity and is not specific enough to be objectively evaluated and enforced); *Summit Technology, Inc. v. High–Line Medical Instruments, Co.,* 933 F.Supp. 918, 931 (C.D. Cal. 1996) (use of term "reliable" in sales is too vague and general to be actionable); *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1008 (7th Cir. 2004) (phrase "high quality" to describe care levels amounted to sales puffery).

Accordingly, for these three independent reasons, Boyer is a "sham" defendant whose citizenship is to be ignored for purposes of diversity jurisdiction. Because the negligent misrepresentation and negligence claims against Boyer are fatally deficient, his citizenship is to be disregarded for purposes of removal jurisdiction.

## JOINDER

Because Boyer was fraudulently joined, he need not join for purposes of removal. *Farias v. Bexar County Board of Trust*, 925 F.2d 866, 871 (5th Cir. 1991).[5] All of the other

---

[5] While Boyer's joinder in AXA Equitable's removal is not believed to be necessary, to the extent the Court disagrees, Boyer has agreed to removal of the case to federal court and joins in AXA Equitable's Notice of Removal. *See* Orlando Decl., ¶ 4.

HINSHAW & CULBERTSON
633 West 5th Floor, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

1    defendants are fictitiously named or non-existent defendants that need not be considered for

2    purposes of removal under 28 U.S.C. § 1441(a).

3

4                                         **PROCESS**

5          The Summons, the Complaint, and all documents served with the Summons and

6    Complaint, true and correct copies of which are attached hereto as **Exhibit A**, constitute the entire

7    process and pleadings filed in the state court action.

8          Written notice of the filing of this Notice of Removal has been given to all adverse

9    parties and a copy has been filed with the Clerk of the Superior Court of the State of California,

10   County of Marin, in accordance with the provisions of 28 U.S.C. § 1446(d).

11         WHEREFORE, AXA Equitable prays that this action in the Superior Court of

12   California for the County of Marin be removed to this Court.

13

14   DATED:    March 2, 2017                    HINSHAW & CULBERTSON LLP

15

16                                   By: /s/ Vivian I. Orlando
                                         Martin E. Rosen
17                                       Vivian I. Orlando
                                         Attorneys for Defendant
18                                       AXA Equitable Life Insurance Company

19

20

21

22

23

24

25

26

27

28

HINSHAW & CULBERTSON
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

                                         10

1

## CERTIFICATE OF SERVICE

2

*Finkelstein v. AXA Equitable Life Insurance Company*

3

**Case No. x-cv-** 17-1089

4

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

5

6

7

I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of 18 and not a party to the within actions; my business address is 633 West 5th Street, Los Angeles, CA 90071-2800.

8

9

On March 2, 2017, I served the document(s) entitled, **NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1441 AND 1446 ON THE BASIS OF DIVERSITY JURISDICTION [28 U.S.C. § 1332]**, on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

10

Rebecca Grey, Esq.                          Attorneys for Plaintiff

11

The Grey Law Firm, P.C.                     David Finkelstein, M.D.
The Russ Building

12

235 Montgomery Street, Suite 1101
San Francisco, CA 94111

13

(415) 262-9926
grey@greylaw-sf.com

14

15

16

17

18

☒ **(BY MAIL)**:     I deposited such envelope in the mail at Los Angeles, California with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

19

20

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on March 2, 2017, at Los Angeles, California.

21

22

Nora Oliver

23

24

25

26

27

28

36249684v1 0990308